Filed 9/12/24  P. v. Reaza CA4/2
Opinion following order vacating prior opinion

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E074012 |
| v. | (Super.Ct.No. RIF113648) |
| RONNIE CRUZ REAZA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge. Reversed and remanded with directions.

Lynda A. Romero, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, and Lynne G. McGinnis, Deputy Attorney General, for Plaintiff and Respondent.

1

Defendant and appellant Ronnie Cruz Reaza filed a petition for resentencing pursuant to Penal Code former section 1170.95,[1] which the superior court summarily denied.  On appeal, defendant contended the court erred in summarily denying his petition without affording him the opportunity to file a reply to the People's opposition.

In an unpublished opinion filed October 8, 2021, we affirmed, holding that the jury's true finding on the gang murder special circumstance rendered defendant per se ineligible for resentencing on his murder conviction.[2]  By order dated April 24, 2024, the California Supreme Court ordered the matter transferred to this court with directions to vacate our decision and reconsider the matter in light of *People v. Curiel* (2023) 15 Cal.5th 433, 448 (*Curiel*).

In his supplemental brief on remand, defendant contends the holding in *Curiel* that a jury's true finding on a gang murder special circumstance is insufficient alone to find a

---

[1]  All further statutory references are to the Penal Code unless otherwise indicated.

Effective June 30, 2022, Assembly Bill No. 200 (2021-2022 Reg. Sess.) amended and renumbered Penal Code section 1170.95 as section 1172.6.  (Stats. 2022, ch. 58, § 10.)

[2]  We also held that the superior court properly denied defendant's petition as to his *attempted* murder conviction because then existing legislation did not extend relief to convictions for *attempted* murder.  On December 22, 2021, the California Supreme Court granted review of our decision and transferred the matter back to us with directions to vacate our opinion and reconsider the cause in light of Senate Bill No. 775 (2021–2022 Reg. Sess.; Stats. 2021, ch. 551), which extended former section 1170.95 relief to those convicted of *attempted* murder or manslaughter effective January 1, 2022.  (*People v. Delgadillo* (2022) 14 Cal.5th 216, 223, fn. 3.)  On March 18, 2022, we issued a new opinion in which we reversed in part and remanded the matter for reconsideration by the trial court as to whether defendant was entitled to relief solely on this *attempted* murder conviction.

defendant ineligible for section 1172.6 relief as a matter of law, requires that we reverse and remand the matter for an evidentiary hearing. The People concede the matter must be reversed and remanded for an evidentiary hearing. We agree with the parties.

## I. FACTUAL AND PROCEDURAL BACKGROUND[3]

Defendant was the driver involved in a drive-by shooting committed with a shotgun; one person was killed and another injured. Officers recovered a shotgun in a vehicle driven by someone who testified that defendant had given him the shotgun. The witness testified defendant told him to keep the shotgun because they had used it to shoot at rival gang members. Defendant admitted to police that he drove the vehicle that night and that his passenger had fired shots at the victims; however, defendant denied knowing in advance that his passenger intended to shoot. (*People v. Reaza*, *supra*, E038773.)

On October 21, 2004, the People charged defendant by felony information with murder (§ 187, subd. (a), count 1), attempted murder (§§ 664, 187, subd. (a), count 2), personally discharging a firearm from a moving vehicle (§ 12034, subd. (c), count 3), personally discharging a firearm at an inhabited dwelling house (§ 246, count 4), and being a felon in possession of a firearm (§ 12021, subd. (a)(1), count 5). As to the count 1 offense, the People further alleged that the murder was intentional and perpetrated by the discharge of a firearm at another person from a motor vehicle (§ 190.2, subd. (a)(21)); that defendant intentionally killed the victim to further the criminal activities of a

---

[3] By order dated December 31, 2019, we took judicial notice of the record in defendant's appeal from the original judgment. (*People v. Reaza* (Oct. 11, 2006, E038773) [nonpub. opn.]; see Evid. Code, § 459.)

criminal street gang while an active participant in a criminal street gang (§ 190.2, subd. (a)(22)); and that a principal personally and intentionally discharged a firearm causing great bodily injury or death (§ 12022.53, subds. (d), (e)(1)).

As to the count 2 offense, the People additionally alleged that a principal personally and intentionally discharged a firearm causing great bodily injury or death. (§ 12022.53, subds. (d), (e)(1).) As to counts 1 through 4, the People alleged that defendant committed the offenses for the benefit of, at the direction of, and in association with a criminal street gang. (§ 186.22, subd. (b).) Finally, the People alleged defendant had suffered a prior strike conviction. (§§ 667, subds. (c), (e)(1), 1170.12, subd. (c)(1).)

The court instructed the jury with aiding and abetting principles (CALJIC No. 3.01) and the natural and probable consequences doctrine (CALJIC No. 3.02).[4] The court gave the jury "special" instructions that "[a]iding and abetting the perpetrator of a specific intent crime requires that the defendant share the specific intent of the perpetrator. However, an aider and abettor will 'share' the perpetrator's specific intent when he or she knows the full extent of the preparator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime." "If you find the defendant guilty of Murder as charged in Count 1, or Attempted Murder as charged in Count 2, as an aider and abettor, you need not find the defendant personally premediated and deliberated, provided you find that the shooter did

---

[4] The court identified the target crime of the natural and probable consequences instruction as discharging a firearm at an inhabited dwelling. (*People v. Reaza*, *supra*, E038773.)

4

premediate and deliberate." The court also instructed the jury with CALJIC No. 8.81.22 on the requirements for finding true the intentional killing by an active street gang member special circumstance: "it must be proved: [¶] 1. The defendant intentionally killed the victim . . . ."

During closing argument, the prosecutor told the jury defendant was not the shooter. The prosecutor also discussed the natural and probable consequences doctrine: "But an aider and abettor need not deliberate and premediate. Basically, if the person who commits the actual killing premediated and deliberated, and therefore, it's first-degree murder, and the defendant aided and abetted a premediated and deliberate murder, a first-degree murder, he is also liable for first-degree murder as an aider and abettor. He is liable for exactly the same crime as the person who pulls the trigger."

On May 23, 2005, the jury found defendant guilty on all charges, including first degree murder in count 1, and found all enhancement allegations true.[5] The court sentenced defendant to life in prison without the possibility of parole; a consecutive term of 25 years to life; a consecutive sentence of life with the possibility of parole, with a minimum parole eligibility term of 30 years; a consecutive term of 25 years to life; a consecutive term of 30 years to life; and a consecutive term of 16 years four months. (*People v. Reaza*, *supra*, E038773.)

---

[5] Defendant admitted suffering the prior strike conviction.

On appeal, defendant contended that the jury improperly convicted him of discharging a firearm at another person from a vehicle, that insufficient evidence supported the gang enhancements, and that the court improperly imposed various aspects of his sentence. In an opinion filed October 11, 2006, this court affirmed the judgment but ordered the determinate term vacated; the cause remanded for resentencing; ordered the court to stay sentence on count 3, including the enhancement; and ordered the court to strike the parole revocation fine. (*People v. Reaza*, *supra*, E038773.)

On January 7, 2019, defendant filed a petition for resentencing pursuant to former section 1170.95. On March 8, 2019, the People filed a response in which they argued, in part, that defendant was ineligible for relief because he aided and abetted the offenses with the intent to kill. The People noted that the jury had found true two special circumstance findings that required an intent to kill: shooting from a motor vehicle (§ 190.2, subd. (a)(21)) and active participation in a criminal street gang (§ 190.2, subd. (a)(22)).[6]

At the hearing on April 19, 2019, the public defender noted, "We have not filed a reply. We ask for a 90-day stay." The court ordered the matter stayed. However, the People asked to be heard, to which the court acquiesced. The People noted that the jury had found true two special murder circumstances requiring that defendant had intended to kill the victim. The court summarily denied the petition.

---

[6] The People attached a copy of this court's opinion in *People v. Reaza*, *supra*, E038773, to their response.

## II.  DISCUSSION

"The Legislature enacted Senate Bill [No.] 1437 'to more equitably sentence offenders in accordance with their involvement in homicides.'  (Stats. 2018, ch. 1015, § 1(b).)  The Legislature recognized, 'It is a bedrock principle of the law and of equity that a person should be punished for his or her actions according to his or her own level of individual culpability.'  [Citation.]  With this purpose in mind, Senate Bill [No.] 1437 'amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.'  [Citation.]" (*Curiel*, *supra*, 15 Cal.5th at p. 448.)

""""[I]f the record, including the court's own documents, 'contain[s] facts refuting the allegations made in the petition,' then 'the court is justified in making a credibility determination adverse to the petitioner.""""  [Citation.]  Consequently, '[i]f the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition.'  [Citation.]" (*Curiel*, *supra*, 15 Cal.5th at p. 460.)

"While a finding of intent to kill does not, itself, suffice to refute a petitioner's allegation under section 1172.6, subdivision (a)(3), a trial court does not end its prima facie inquiry there.  Other aspects of the record, such as additional jury findings, might be relevant to the remaining elements of the relevant homicide offense and conclusively refute a petitioner's allegation that he or she could not be convicted of murder under current law." (*Curiel*, *supra*, 15 Cal.5th at p. 463.)  A special circumstance finding

rendered prior to *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522 likewise does "not have preclusive effect in resentencing proceedings under section 1172.6." (*Curiel*, at p. 464, citing *People v. Strong* (2022) 13 Cal.5th 698, 717-718.)

"[T]he question is not whether it is likely a defendant could have felt and acted in such a [sufficiently culpable] way, but whether the court's jury instructions foreclose that possibility *as a matter of law*. Only in the latter scenario would a trial court be permitted to deny a defendant's section 1172.6 petition at the prima facie stage. [Citation.] In other words, only in that scenario would the record of conviction 'establish conclusively that the defendant is ineligible for relief.' [Citation.]" (*Curiel*, *supra*, 15 Cal.5th at p. 470.) "'"This is a purely legal conclusion, which we review de novo."'" [Citation.]" (*People v. Lopez* (2022) 78 Cal.App.5th 1, 14.)

Here, like in *Curiel*, the court instructed the jury on aiding and abetting principles, an underlying target offense, the natural and probable consequences doctrine, and special murder circumstance allegations. (*Curiel*, *supra*, 15 Cal.5th at p. 466-467.) Thus, although "[t]he jury found [defendant] guilty of first degree murder and found true the gang-murder special circumstance, . . . it was not required to identify which theory it found persuasive." (*Id.* at p. 467.) For section 1172.6 purposes, "Assuming the jury relied on the then-available natural and probable consequences doctrine to convict [defendant] of murder, . . . the jury's factual findings [are] insufficient under current law based on the absence of the last element of direct aiding and abetting, the aider and abettor's actus reus." (*Curiel*, at p. 467.)

8

In other words, for a court to summarily deny a section 1172.6 petition, it must be able to find that "the aider and abettor must have [had] 'knowledge of the unlawful purpose of the perpetrator' and 'the intent or purpose of committing, encouraging, or facilitating' the commission of the offense. [Citation.] Alternatively, in the context of implied malice murder, the aider and abettor must know the perpetrator intends to commit a life-endangering act, intend to aid the perpetrator in the commission of that act, know the act is dangerous to human life, and act in conscious disregard for human life." (*Curiel*, *supra*, 15 Cal.5th at p. 468.)

"Under the court's instructions, the jury was not required to make these findings. Because the jury was instructed on the natural and probable consequences doctrine, the jury was required to find only that [defendant] knew that [the shooter] intended to commit one of the underlying target offenses and that [defendant] intended to aid him in that offense, not murder. Nor was the jury required to find that the underlying target offenses, themselves, were dangerous to human life. While the jury separately found [defendant] intended to kill, such an intent standing alone is insufficient to establish the requisite mens rea for aiding and abetting murder." (*Curiel*, *supra*, 15 Cal.5th at p. 468.) "Indeed, a defendant could act with intent to kill but at the same time believe the actual perpetrator could never risk harm to another human being—and be genuinely surprised when the actual perpetrator commits a life-endangering act."[7] (*Id*. at 470, fn. omitted.)

---

[7] Although the *Curiel* court noted, "We have characterized this scenario—where a defendant is liable for murder under the natural and probable consequences doctrine, and acts with malice aforethought, but is not liable as a direct aider and abettor—as 'quite

*[footnote continued on next page]*

9

"Although intent to kill is certainly blameworthy, it is insufficient standing alone to render a person culpable for another's acts.  The aider and abettor must know the direct perpetrator intends to commit the murder or life-endangering act and intend to aid the direct perpetrator in its commission.  It is this mental relationship to the perpetrator's acts that confers liability on the aider and abettor." (*Curiel*, *supra*, 15 Cal.5th at p. 468.)

Thus, again, "under the jury instructions here, the findings the jury must have made are insufficient to conclusively establish that [defendant] is liable for murder under current law.  The jury could have relied on the natural and probable consequences doctrine to convict [defendant] of murder, and the findings required under that theory— even when combined with the finding of intent to kill required by the gang-murder special circumstance—do not encompass all of the elements of any theory of murder under current law.  These findings were therefore insufficient to rebut [defendant's] allegation that he could not be convicted of murder under current law, and the trial court erred by denying [defendant's] petition for resentencing at the prima facie stage." (*Curiel*, *supra*, 15 Cal.5th at p. 471.)

---

narrow' and relevant only to a 'very small set of cases.' [Citation.]  But the question is not whether it is *likely* a defendant could have felt and acted in such a way, but whether the court's jury instructions foreclose that possibility as a matter of law.  Only in the latter scenario would a trial court be permitted to deny a defendant's section 1172.6 petition at the prima facie stage.  [Citation.]  In other words, only in that scenario would the record of conviction 'establish conclusively that the defendant is ineligible for relief.' [Citation.]" (*Curiel*, *supra*, 15 Cal.5th at p. 470.)

### III.  DISPOSITION

The order denying defendant's petition is reversed.  The matter is remanded with directions to issue an order to show cause under section 1172.6, subdivision (c), and to hold a hearing under section 1172.6, subdivision (d)(1).  We express no opinion on whether defendant would be entitled to relief following the hearing.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER           

J.

We concur:

RAMIREZ           
        P. J.

RAPHAEL           
        J.